# EXHIBIT B

William H. Blessing (#0006848)
Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| **PAUL ABELMAN, *et al.*,** | : **Case No. 2:07-cv-793** |
| | : **Judge Michael H. Watson** |
| **Plaintiffs,** | : **Magistrate Judge Norah McCann King** |
| | : |
| **v.** | : |
| | : **FIRST AMENDED** |
| **COLGATE-PALMOLIVE CO. *et al.*,** | : **CLASS ACTION COMPLAINT** |
| | : |
| **Defendants.** | : |

## Nature of Action

1.      This is a class action under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

## Subject Matter Jurisdiction

2.      This Court has subject matter jurisdiction over this action by virtue of 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under ERISA § 502, 29 U.S.C. § 1132.

## Personal Jurisdiction and Venue

3.      This Court has personal jurisdiction over Defendants (defined below) because they transact business in, and have significant contacts with, this District, and because ERISA provides for nationwide service of process.  *See* ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

4.      Under ERISA § 502(e), 29 U.S.C. § 1132(e), an action "may be brought in the district where the plan is administered, where the breach took place, or where a

defendant resides or may be found."  Venue here is proper for Defendants on three of the four bases provided by the statute.

5.    First, this is the District where, among other places, the alleged breaches occurred.  Where a participant claims that a violation of ERISA resulted in a failure to pay a benefit due under an ERISA plan, either under the express terms of the plan or terms implied by law, the alleged breach is deemed to have occurred in the place where the participant received or should have received his or her plan benefits.  It was in this District, where some of the Plaintiffs currently reside and resided at the relevant time, that the Plan benefits at issue here should have been paid to them.

6.    Second, the Plan, the Plan administrator and the Company "may be found" in this District in either a general or specific personal jurisdiction sense.

7.    There is general personal jurisdiction over the Plan and Plan administrator because many hundreds of residents of this District, as employees of the Company, are currently accruing benefits under the Plan in this District, or, as former employees of the Company, are currently receiving benefits from the Plan in the District.  In addition, the Plan and Plan administrator come into this District on a continuous basis to communicate with these District residents regarding their benefits, including through a highly-interactive Plan internet website.

8.    There is general personal jurisdiction over the Company because it has continuous and systematic contacts with this District through its employment of many hundreds of District residents, ownership of property in the District, operation of a manufacturing plant in this District and operation of numerous offices in this District.

9.    There is specific personal jurisdiction over all Defendants insofar as this

action arises out of the failures to pay Plaintiffs Abelman and Nutter and other proposed

Class members residing in this District pension benefits that should have been paid in this

District.

10.      Third, each Defendant "resides" here within the meaning of ERISA

§ 502(e)(2), 29 U.S.C. § 1132(e)(2).

### The Parties

11.      Plaintiff Paul Abelman, a resident of New Albany, Ohio, is a former

employee of the Company or one or more of its affiliates or former affiliates who

participated in the Plan during his period of employment with the Company.  Mr.

Abelman remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the

Plan because although he received benefits from the Plan, the Plan owes him additional

benefits that it has not yet paid him, as set forth herein.

12.      Plaintiff Valerie R. Nutter, a resident of Zanesville, Ohio, is a former

employee of the Company or one or more of its affiliates or former affiliates who

participated in the Plan during her period of employment with the Company.  Ms. Nutter

remains a participant, as defined in ERISA § 3(7), 29 U.S.C. §1002(7), in the Plan

because although she received benefits from the Plan, the Plan owes her additional

benefits that it has not yet paid her, as set forth herein.

13.      Plaintiff Warren Jemmott is a former employee of the Company or one or

more of its affiliates or former affiliates who participated in the Plan during his period of

employment with the Company.  Mr. Jemmott remains a participant, as defined in ERISA

§ 3(7), 29 U.S.C. §1002(7), in the Plan because, among other things, he has not received

any portion of his vested accrued benefit from the Plan.

14.    Plaintiff Susan Byrd is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Byrd remains a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

15.    Plaintiff Adriana Vasquez is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Vasquez remains a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

16.    Plaintiff Cora Nelson-Manley is a former employee of the Company or one or more of its affiliates or former affiliates who participated in the Plan during her period of employment with the Company.  Ms. Nelson-Manley remains a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan because although she received benefits from the Plan, the Plan owes her additional benefits that it has not yet paid her, as set forth herein.

17.    Defendant Colgate-Palmolive Company ("Colgate" or the "Company"), a domestic corporation, is the sponsor of the Plan and subject to applicable law, has the power and duty to amend the Plan or otherwise take action, including retroactively, in order to meet the tax qualification requirements of the Internal Revenue Code (the "Code").

18.    Colgate, acting through its Board of Directors, is also a fiduciary with respect to the Plan insofar as it controls the Plan administrator, Defendant Employee

Relations Committee ("ERC" or the "Committee"). Colgate possesses and exercises the power to appoint, remove, approve and monitor the performance of the ERC's individual members all of whom are Company employees. In these and related ways, it exercises discretionary authority or discretionary control respecting management of the Plan and has discretionary authority or discretionary responsibility in the administration of the Plans.

19.    Colgate is also fiduciary because it, directly and indirectly (such as through the ERC and others), communicates with Plan participants with respect to the Plan.

20.    Defendant Colgate-Palmolive Company Employees' Retirement Income Plan (EIN: 13-2854931 - Plan No.: 001) (the "Plan") is and was at all relevant times an "employee pension benefit plan," and more specifically a "defined benefit plan," within the meaning of ERISA §§ 3(2)(A) and 3(35), 29 U.S.C. §§ 1002(2)(A) and 1002(35).

21.    Defendant ERC is the Plan's administrator and a named fiduciary under the Plan within the meaning of ERISA. ERISA §§ 3(16)(A), 402(a), 29 U.S.C. §§ 1002(16)(A), 1102(a).

**Additional Allegations**

22.    Plaintiff Abelman was employed by the Company or one of its affiliates for approximately 12 years, from 1992 until 2005. Mr. Abelman is 100% vested in his accrued benefit under the Plan, according to the Plan's vesting schedule.

23.    Plaintiff Nutter was employed by the Company or one of its affiliates for approximately 12 years, from 1988 until 2000. Ms. Nutter is 100% vested in her accrued benefit.

24.     Plaintiff Jemmott was employed by the Company or one of its affiliates for more than three years, from 2002 to 2006.  Mr. Jemmott is 50% vested in his accrued benefit.

25.     Plaintiff Byrd was employed by the Company or one of its affiliates for approximately 5 years, from 1991 to 1996.  Ms. Byrd is 75% vested in her accrued benefit.

26.     Plaintiff Vasquez was employed by the Company or one of its affiliates for approximately 16 years, from 1989 to 2005.  Ms. Vasquez is 100% vested in her accrued benefit.

27.     Plaintiff Nelson-Manley was employed by the Company or one of its affiliates for approximately 6 years, from 1998 to 2006.  Ms. Nelson-Manley is 100% vested in her accrued benefit.

28.     Throughout that time, Plaintiffs accrued pension benefits under the Plan, a defined benefit plan of the "cash balance" variety, in which a hypothetical account, known as a "Personal Retirement Account" ("PRA" or "Account"), was established for each of them.

29.     Under the terms of the Plan, Plaintiffs accrued, among other things, "pay credits" based on a percentage of their pensionable compensation and monthly "interest credits" in an amount, determined quarterly, equal to 1/12 of an effective annual calendar year rate equal to the sum of the average rate of a new 6-month Treasury bill in effect during the quarter, plus 2%.

30.     Pay credits were allocated to Plaintiffs' accounts according to the following schedule:

| YEARS OF SERVICE | UP TO ¼ OF SSWB[1] | OVER ¼ OF SSWB |
|:---:|:---:|:---:|
| 0-9 | 2.50% of pay | 3.75% of pay |
| 10 -14 | 3.00% of pay | 4.50% of pay |
| 15-19 | 4.00% of pay | 6.00% of pay |
| 20-24 | 5.35% of pay | 8.00% of pay |
| 25 or more | 7.50% of pay | 11.25% of pay |

31.     Under the Plan, participants' right to receive future interest credits on their account balances through normal retirement age (age 65) accrued at the same time as the corresponding pay credits to which the interest credits relate.  In technical terms, the Plan was and is, as a result, a "frontloaded" interest crediting plan within the meaning of the law.  *See, e.g.,* IRS Notice 96-8, 1996-1 C.B. 359-61.

32.     After terminating employment, Plaintiffs Abelman and Nutter filed written applications for benefits with the ERC and elected to receive their fully-vested Plan benefits in the form of a lump sum distribution in 2006 and 2000, respectively.  Plaintiff Abelman was 43 at the time and Plaintiff Nutter was 36 at the time.

33.     The Plan calculated and paid Plaintiff Nutter a benefit according to the terms of the Plan in October 2000 which the Plan forwarded to her at her home in Zanesville in the form of a check in the amount of $27,258.64.  The Plan calculated and paid Plaintiff Abelman a benefit according to the terms of the Plan on or about April 2006 which the Plan forwarded to his home in New Albany in the form of a check in the amount of $60,654.37.

34.     Similarly, in the case of Plaintiffs Byrd, Vasquez and Nelson-Manley,

---

[1] Social Security Wage Base.

after they terminated employment, they filed their written application for benefits with the ERC and also elected to receive their fully-vested Plan benefits in the form of a lump sum distribution in 1996, 2005 and 2006, respectively.  They too had not yet attained normal retirement age under the Plan at the time.

36.    However, the amounts the Plan paid these Plaintiffs were underpayments, less than the actuarial equivalents of their accrued benefits, and/or otherwise insufficient as a matter of law.  Similarly, in the case of Plaintiff Jemmott who has not yet requested his benefit, it too would be legally insufficient.

36.    The two basic reasons for this are:

(1)   Since the Plan's adoption of a cash balance formula in 1989, the Plan has failed to perform the calculation, often referred to as the "whipsaw" calculation, required to ensure that participants requesting their accrued benefit in the form of lump sum prior to normal retirement age are paid an amount actuarially equivalent to the annuity promised under the Plan commencing at age 65.

(2)   Also since inception, the Plan's basic formula has been impermissibly backloaded, violating the anti-backloading provisions of ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), due to its accelerating pay-based crediting schedule and the absence of a minimum interest crediting rate.  (The anti-backloading rules prevent a plan from weighing the accrual of benefits heavily in favor of long-term employees at the expense of short-term employees.  The only one of the three backloading tests that the Colgate Plan could satisfy is that set forth in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B), *i.e.* the 133 and 1/3% rule under which no later rate of accrual is more than one third greater than any earlier rate.)  The Plan fails, by design and in operation, the 133

and 1/3% rule.

37.     Among the ways, as a result, that the Plan incorrectly calculated, calculates and, without court intervention, will in the future incorrectly calculate the accrued benefits of Plaintiffs and members of the proposed Class, are as follows:[2]

38.     **First,** the Plan failed to project the account balances of Plaintiffs and members of the relevant Subclass (Subclass A, defined more fully below) to normal retirement age at the Plan's crediting rate or a rate that did not understate the value of the interest credits they had the right to receive through that age.

39.     **Second**, as to Plaintiffs and members of Proposed Subclass B, the Plan failed to project to normal retirement age the pay credits that they had earned prior to January 1, 2000, according to the rate set forth in the Plan for this purpose, *see* Plan, Art. 1, § 1.3, first para., p.3.

40.     **Third**, as to Plaintiffs and members of Proposed Subclass C, the Plan failed to annuitize the portion of their pay credits (projected to normal retirement age) earned prior to January 1, 2000, using the Plan's annuity conversion factors, *see* Plan, Art. 1, § 1.3, first para., p.3.

41.     **Fourth,** Defendants failed to correct the Plan's impermissibly backloaded formula by providing for (i) minimum pay credits regardless of a participant's years of service, (ii) a minimum interest credit to be applied to all accounts for all periods, or (iii) some combination of both.  Because by far the least costly solution to the Plan's excessively accelerating pay-based crediting schedule would have been and is to credit all participants for all periods a minimum interest credit of **5.89%,** it is to that solution that

---

[2] Use of the past tense is solely for purposes of avoid awkward sentence construction.  All of the alleged violations are, to varying degrees, still ongoing.

Plaintiffs confine their attention.  As to Plaintiffs and the member of proposed Subclass D, that 5.89% minimum interest credit should have been applied to all participants' accounts for all periods that the then-current crediting rate fell below 5.89%.  As to Plaintiffs and the member of proposed Subclass E, the 5.89% minimum should also have been used to project their account balances to normal retirement age whenever it would have yielded a higher lump sum than another otherwise applicable rate would have.

### Claims

42.    ERISA §§ 203(e) and 205(g), 29 U.S.C. §§ 1053(e) and 1055(g), and Internal Revenue Code § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d), requires any optional form of benefit paid from a defined benefit plan, including a lump sum distribution, to be no less than the present value of the participant's accrued benefit expressed as an annuity commencing at normal retirement age (under the Plan, age 65).

43.    The Plan paid Plaintiffs lump sum benefits that were less than the present value of their respective accrued benefits in violation of ERISA §§ 203(e) and 205(g), and IRC § 417(e), as implemented by Treasury Regulation § 1.417(e)-l(d).

44.    The Plan's conduct as described above also resulted in an impermissible forfeiture of  benefits prohibited by ERISA § 203(a) and Internal Revenue Code § 411(a), as implemented by Treasury Regulation § 1.411(a)-4 and 4T, in that the Plan conditioned the right to receive future interest credits on Plaintiffs not taking a distribution prior to normal retirement age.

45.    The Plan's failure to credit participant accounts and failure to perform actuarial equivalent calculations using the 5.89% minimum interest crediting rate discussed above caused the Plan to violate ERISA's service-based accrual rules.  *See*

ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B).

46. The Plan's operational noncompliance with the backloading rules became chronic and especially acute in 2002 due to falling interest rates. Minutes of ERC meetings reflect that Defendants knew of the problem and made efforts to address it. But in so doing Defendants made the backloading worse, not better.

47. Instead of doing what they had to do, *i.e.,* declare a minimum interest credit of 5.89% for all participants for all periods, Defendants enacted an amendment that: (1) only applied to participants who complete 25 years of service by the end of the 2002 plan year; (2) guaranteed a rate of only 5.5%; and (3) at least on its face, indicated that the rate was to be applied for that year only (2002). Defendants enacted the identical amendment each year since 2002: 2003, 2004, 2005 and 2006.

48. Even putting aside that 5.5% is markedly below the required 5.89% minimum, Defendants' actions designed "to ensure compliance with IRS backloading rules," the increase to 5.5% was focused, literally, on the wrong group of participants.

49. The participants most directly and adversely affected by the Plan's illegally backloaded formula is everyone who has **not** completed 25 years of service, indeed, the fewer years of service the worse the personal impact of the backloading. For sake of argument, if any group of participants could be ignored for purposes of fixing the deficiencies with the formula (and Plaintiffs do not believe anyone could be) it was the participants who had already completed 25 years of service: they had already endured the excessively backloaded formula and come out on the other side, after reaching the plateau of 7.50% of pay, a crediting rate which thereafter never increases.

50. Granting an increase to 5.5% for just that cohort, in fact, made the Plan's

backloading problem worse, not better, because the 5.5% is itself a **backloaded** interest credit.[3]

51.    On its face, the 5.5% rate is not guaranteed but dependent on the participant continuing to work to the point that he or she actually completes 25 years of service. It is, in other words, a "backloaded interest credit" instead of "frontloaded" interest credit. As the IRS explained in IRS Notice 96-8, backloaded interest credit plans "typically will not satisfy any of the accrual rules in section 411(b)(1)(A), (B) or (C)," *i.e.,* ERISA and the Code's "anti-backloading" strictures. While the Colgate Plan is designed as a frontloaded interest credit plan, without a plan-wide, permanent 5.89% minimum interest guarantee, the Plan fails the backloading test. It thus cannot tolerate any **additional** backloading.

52.    The easiest solution in such circumstance would be to remove the condition imposed delaying the accrual of the benefit, *i.e.,* to make it frontloaded, such that anyone entering service for Colgate prior to age 65, such that they **could** complete 25 years of service, would be deemed to immediately accrue (in 2002 or no later than 2005) the right to a guaranteed 5.5% crediting rate at the time in the future when they would or could have completed 25 years of service.

53.    The resultant 5.5% minimum guarantee in turn forms the basis for

---

[3] Any suggestion that the 5.5% amendments were merely *ad hoc,* 1-year amendments and that the 5.5% guarantee did not become a permanent feature of the Plan would be unavailing. The sponsor's explicitly stated purpose in adopting the amendments were to fix the Plan's acknowledged backloading problem. As a matter of law, the increase would have to be permanent in order to have the intended ameliorative effect. In any event, no later than 2005, the 5.5% minimum became a permanent, nonforfeitable feature of the Plan under the pattern of repeated plan amendments doctrine. *See* 26 C.F.R. § 1.411(d)-4, Q & A-1(c)(1), Rev. Rul. 92-66, 1992-2 C.B. 93.

additional violations and request relief[4] on behalf of Plaintiffs and proposed Subclass F.

because Defendants failed, as required:  (a) to apply the 5.5% minimum to participant

accounts from 2002 going forward during any period when the crediting rate is below

5.5%; and (b) also failed to use that 5.5% in performing the calculation required for the

accumulation phase of the required whipsaw calculations for the period between the time

the participant could have completed 25 years of service and normal retirement age.  For

those years, affected participants' account balances have to be projected at least at 5.5%

before determining which of the several methods that must be used for calculating

participants' lump sums yields the greatest amount.[5]

**Class Allegations**

54.    Plaintiffs bring suit on behalf of themselves and on behalf of all other

participants and beneficiaries similarly situated under the provisions of Rule 23 of the

Federal Rules of Civil Procedure with respect to violations alleged herein.  Plaintiffs

propose a Class and several Subclasses.[6]

55.    The proposed Class is defined as follows:

---

[4] Direct harm (as opposed to the violation) may be cured to a degree if a 5.89% minimum interest credit is imposed to cure the Plan's more serious and systematic backloading violations.

[5] By way of illustration, all five Plaintiffs taking distributions were less than 40 years old when joining the Company, although two of them (Ms. Nutter and Ms. Byrd) took their distribution before the effective date of the amendment.  Thus, three of the five Plaintiffs (Abelman, Vasquez, Nelson-Manley) should have their whipsaw calculations performed using the 5.5% rate for the years following the time they could have completed 25 years of service and normal retirement age.  Similarly, Plaintiff Jemmott, who also entered into service prior to age 40 (at age 27 in September 2002), should he choose to keep his benefit in the Plan, he should be entitled to a guaranteed 5.5% minimum crediting rate starting at approximately age 52, when he could have completed 25 years of service.  By the same token, should he now elect a lump sum, one way in which his benefit should be calculated is to use the minimum 5.5% crediting rate for the accumulation phase of the whipsaw calculation for the approximately 13 years between age 52 and age 65, normal retirement age.

[6] Plaintiffs do not imply that certification of some or all claims would be inappropriate without the formation of one or more subclasses.

13

> All persons who have accrued or are accruing benefits under the Colgate-Palmolive Company Employees' Retirement Income Plan (the "Plan") and as to whom an Account was or has been established and maintained as defined in Plan, Art. 1 § 1.1, and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass A is defined as follows:

> All Class members who received a distribution from the Plan in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when, at time their lump sums were calculated, the Plan's interest crediting rate exceeded the applicable discount rate and/or when the lump sum would have exceeded the Account balance had it been projected to normal retirement age at a rate that did not understate the value of the interest credits these Plan participants had the right to receive through that age, before being converted to an annuity and discounted to a present value at the statutory interest rates then in effect, *i.e.,* had a "whipsaw" calculation as described in IRS Notice 96-8 been performed; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass B is defined as follows:

> All Class members who accrued benefits under the Plan prior to January 1, 2000 and received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when a greater lump sum would have resulted from a whipsaw calculation using the Plan's stated projection rate in effect prior to January 1, 2000 as to benefits accrued prior to that; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass C defined as follows:

> All Class members who accrued benefits under the Plan prior to January 1, 2000 and received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when a greater lump sum would have resulted from a whipsaw calculation that applied the Plan's annuity conversion factors in effect prior to January 1, 2000 to the pre-January 1, 2000 accrued portion of the member's Account balance, regardless of how the accumulation phase of the calculation is performed or whether it independently would result in a whipsaw; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass D is defined as follows:

> All Class members who received a distribution in the form of a lump sum prior to August 17, 2006 that equaled the balance of their Account when a greater lump

sum would have resulted from a whipsaw calculation using the minimum interest rate (5.89%) required to prevent the Plan from failing the backloading test described in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B); and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass E is defined as follows:

All Class members who accrued benefits under the Plan during any period for which the Plan's crediting rate was less than the minimum interest rate (5.89%) required to prevent the Plan from failing the backloading test described in ERISA § 204(b)(1)(B), 29 U.S.C. § 1054(b)(1)(B); and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass F is defined as follows:

All Class members who entered into service for Colgate prior to the age of 40 and who accrued benefits under the Plan during any period for which the Plan's crediting rate was less than 5.5% and/or received a distribution in the form of a lump sum prior to August 17, 2006; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

Proposed Subclass G is defined as follows:

All Class members persons who received a distribution from the Plan in the form of a lump sum after August 17, 2006 that equaled the balance of their Account where such distribution was not preceded by an ERISA § 204(h) notice as described in IRS Notice 2007-6, or all such persons who can in the future receive such a distribution; and the beneficiaries and estates of such persons and alternate payees under a Qualified Domestic Relations Order.

56.     The requirements for maintaining this action as a class action under Fed. R. Civ. P. 23(a)(1) are satisfied in that there are too many Class and Subclass members for joinder of all of them to be practicable.  There are at least hundreds of members of the proposed Class and Subclasses dispersed among many states.

57.     The claims of the Class and Subclass members raise numerous common questions of fact and law, thereby satisfying the requirements of Fed. R. Civ. P. 23(a)(2).

58.     All issues concerning liability are common to all Class and Subclass members because such issues concern their entitlement to benefits calculated in a manner

other than that calculated thus far and their entitlement to relief from harm caused by the violations of law, rather than any action taken by Plaintiffs or any Class member. In addition, all issues concerning relief are also common to the Class. The computation of a participant's lump sum distribution and/or his or her current or then-current account balance, and his or her account is standardized in that the amount of the lump sum distribution and the amount of the account balance for each member of the Class and Subclasses was calculated in the same manner as described above. Thus, there exist common questions of fact as to each member of the Class or particular Subclass in question. Each Class member's rights will be determined by reference to the same Plan documents and the same provisions of ERISA. Thus, there exist common questions of law as to each Class member, *i.e.,* whether the method of calculating of lump sum distributions or account balances violated the law.

59.    Plaintiffs' claims are typical of the claims of Class members, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(3). They do not assert any claims relating to the Plan in addition to or different than those of the Class. Plaintiffs' claims are typical of the claims of the Class members in that their respective lump sum distributions were calculated in the same fashion as the rest of the Class, and their rights, as well as those of the Class as a whole, are similarly provided for under the plan document and applicable provisions of ERISA.

60.    Plaintiffs are adequate representatives of the proposed Class, and therefore satisfy the requirements of Fed. R. Civ. P. 23(a)(4). Plaintiffs' interests are identical to those of the proposed Class and applicable Subclasses. The Plan has no unique defenses against them that would interfere with their representation of the Class or applicable

Subclasses.  Plaintiffs have engaged competent counsel with both ERISA and class action litigation experience.

61.    Additionally, all of the requirements of Fed. R. Civ. P. 23(b)(1) are satisfied in that the prosecution of separate actions by individual members of the proposed Class and applicable Subclasses would create a risk of inconsistent or varying adjudications establishing incompatible standards of conduct for Defendants and individual adjudications present a risk of adjudications which, as a practical matter, would be dispositive of the interests of other members who are not parties.

62.    All of the requirements of Fed. R. Civ. P. 23(b)(2) also are satisfied in that the Plan's actions affected all Class and Subclass members in the same manner making appropriate final declaratory and injunctive relief with respect to the Class and Subclasses as a whole.

**Additional Allegations Re the Accrual of the Applicable Limitations Period**

63.    Defendants and their agents intentionally and/or negligently concealed from Plaintiffs and the proposed Class the foregoing violations and facts underlying them in an effort to avoid liability and possible threatened plan disqualification by the IRS. Defendants did so through misleading statements and omissions made to participants in a variety of contexts including in the Plan's Summary Plan Description; in periodic account statements; on the website dedicated to the Plan; and in connection Plaintiffs' written applications for benefits.

64.    Prior to 2007, Defendants had not denied any portion of any Plaintiff's or proposed Class member's application for benefits seeking payment of the legally required payments at issue here.  Nor in any other way had Defendants repudiated or clearly

repudiated any Plaintiff's or any of Class member's application for benefits seeking payment of the legally required payments at issue here.

65.    As a result of Defendants' failures to disclose and misleading statements and omissions, Plaintiffs only recently learned that they have not received the benefits to which they are lawfully entitled sought here.

### Absence of Exhaustion Requirement

66.    Upon recently learning that they are due additional benefits, Plaintiffs did not exhaust the administrative remedies provided under the terms of the Plan once learning of the violations prior to initiating this lawsuit because exhaustion of the Plan's internal claims process was not required and/or should be excused in this case, for a variety of reasons.

67.    First, the exhaustion requirement does not apply because the claims Plaintiffs raise are statutory claims involving the interpretation of ERISA, not purely plan-based benefit claims involving an interpretation of the Plan.  Congress intended that statutory questions of this nature be adjudicated by Article III judges, not employers acting as plan administrators.

68.    Second, even if the exhaustion requirement is not categorically inapplicable here, it should be excused as futile.  Here, as in *West v. AK Steel Corp.*, 484 F.3d 395 (6th Cir. 2007), "a lump-sum distribution is described [under the plan] as a payment equal to the participant's account balance.  Had [the plaintiff] submitted a timely claim for the recalculation of his lump-sum benefit, the [plan sponsor] would simply have responded, as it has argued in this appeal, that [the plaintiff] has already received an amount equal to his account balances, which is all that he is entitled to under

[the plan sponsor's] interpretation of its Plan." *Id.* at 405.

69.     Futility is also demonstrated by the fact that the legal standards Defendants violated are well-established yet Defendants have failed to conform the Plan or their conduct under it to the requirements of the law, evidencing their belief that the law does not apply to them.

70.     Fourth, exhaustion was not required for the separate but related reason that the Plan's internal claims process, such as it is, is not designed to address and is not capable of addressing alleged statutory violations.

71.     Fifth, the Plan lacks an ERISA-compliant claims process.

72.     Finally, exhaustion should be excused because it would serve few if any of the recognized purposes of the exhaustion requirement, as Plaintiffs will demonstrate should Defendants nevertheless seek to compel exhaustion.

### Plaintiff Jemmott's ERISA §§ 104(b), 105(a) Claim

73.     On July 13, 2007, by registered mail, Mr. Jemmott, a current inactive Plan participant, sent the Plan administrator a request for copies of all documents available to him under ERISA § 104(b)(4), 29 U.S.C. § 1024(b)(4), relating to the Plan, and a statement of his Plan benefit under ERISA § 105(a), 29 U.S.C. § 1025(a).

74.     The Plan administrator failed to comply with any portion of Mr. Jemmott's ERISA § 104(b) request within the required timeframe.

75.     Moreover, nearly four months later, the Plan administrator has yet to provide Mr. Jemmott with any ERISA § 105(a) statement.

76.     In the Plan administrator's belated response to Mr. Jemmott's ERISA § 104(b) request (sent to Mr. Jemmott by and in the name of Colgate and not the Plan or

Plan administrator), Mr. Jemmott was refused copies of documents to which he is entitled as a matter of law.  Among those are documents that Mr. Jemmott explicitly requested – such as a copy of the Plan's most recent actuarial valuation and a copy of all administrative manuals, guidelines, or similar administrative documents used by the Plan administrator to calculate his benefit.  In denying Mr. Jemmott access to anything other than the three documents that were provided, Colgate provided no explanation whatsoever as to why the specifically requested materials could be withheld and did not even acknowledge that a list of specifically identified documents had in fact been requested access to which had been refused.

## Prayer for Relief

WHEREFORE, as to Mr. Jemmott's individual claims, he prays that judgment be entered against the Plan administrator and all available relief awarded.

As to all other claims, all Plaintiffs pray that judgment be entered against Defendants and that the Court award the following relief:

A.     Certification of this action as a class action for all purposes of liability and relief and appointment of undersigned counsel as class counsel pursuant to Fed. R. Civ. P. 23.

B.     Judgment for Plaintiffs and the Class and Subclasses against Defendants on all claims expressly asserted and/or within the ambit of this Complaint.

C.     An order awarding, declaring or otherwise providing Plaintiffs and the Class all other such relief to which Plaintiffs and the Class and Subclasses are or may be entitled whether or not specified herein.

D.     An order awarding pre- and post-judgment interest.

E.      An order awarding attorney's fees on the basis of the common fund

doctrine (and/or other applicable law, at Plaintiffs' election), along with the

reimbursement of the expenses incurred in connection with this action.

F.      An order awarding, declaring or otherwise providing Plaintiffs all relief

under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that Plaintiffs

may subsequently specify and/or that the Court may deem appropriate.


Dated:  November 2, 2007                    Respectfully submitted,


                                            /s/William H. Blessing
                                            William H. Blessing (#0006848)
                                            The Blessing Law Firm
                                            119 East Court Street, Suite 500
                                            Cincinnati, Ohio 45202
                                            Telephone:  (513) 621-9191
                                            Telecopier:  (513) 621-7086

                                            Eli Gottesdiener (admitted *pro hac vice*)
                                            Gottesdiener Law Firm, PLLC
                                            498 7th Street
                                            Brooklyn, New York 11215
                                            (718) 788-1500

                                            *Counsel for Plaintiffs and the proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 2, 2007, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, and served via U.S. First Class mail upon Defendants via their counsel as follows:

Felix Wade
Eve Ellinger
Schottenstein, Zox & Dunn Co., LPA
250 West Street
Columbus, Ohio 43215

Joseph J. Costello
Jeremy P. Blumenfeld
Theresa J. Chung
Morgan, Lewis & Bockius LLP
1701 Market Street
Philadelphia, PA  19103

<u>/s/Eli Gottesdiener</u>
Eli Gottesdiener